UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VENETIA MAY,

    Plaintiff,

v.                               Case No.:  3:24-cv-343-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff Venetia May seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

## B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.  Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on July 20, 2021, alleging disability beginning on January 29, 2021. (Tr. 66, 156-57). The application was denied initially and on reconsideration. (Tr. 66, 75). Plaintiff requested a hearing, and on October 10, 2023, a hearing was held before

Administrative Law Judge Richard Furcolo ("ALJ"). (Tr. 33-58). On November 8, 2023, the ALJ entered a decision finding Plaintiff not under a disability from January 29, 2021, through the date of the decision. (Tr. 10-21). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on February 12, 2024. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on April 5, 2024, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2025. (Tr. 12). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 29, 2021, the alleged onset date. (Tr. 12). At step two, the ALJ found that Plaintiff had the following severe impairments: "spine disorders and abnormalities of major joints." (Tr. 12). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 14).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire hearing record evidence, the undersigned finds the evidence demonstrates claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except: frequently climb stairs; occasionally climb ladders; frequently stoop; frequently reach overhead with the right upper extremity.

(Tr. 15).

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a claims examiner, quality assurance analyst, and project manager. (Tr. 20). The ALJ also determined that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 20). The ALJ concluded that Plaintiff had not been under a disability from January 29, 2021, through the date of the decision. (Tr. 21).

## II.     Analysis

On appeal Plaintiff challenges the ALJ's RFC assessment arguing that the ALJ failed to account for the total limiting effects of Plaintiff's physical and mental impairments. (Doc. 10, p. 1). Plaintiff contends that the ALJ failed to properly consider her right-side cubital tunnel syndrome impairment and her anxiety impairment. (Doc. 10, p. 6, 12). Plaintiff also contends that the ALJ did not consider Plaintiff's lack of insurance and inability to afford medical care during the relevant period. (Doc. 10, p. 7).

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id.*

    **A.**    **Cubital Tunnel Syndrome**

Prior to her onset date of January 29, 2021, Plaintiff contends that in December 2019, she was diagnosed with moderate to severe cubital tunnel syndrome on the right side, as shown by a positive ulnar nerve compression test. (Doc. 10, p. 7; Tr. 274-75). Plaintiff also contends that she is right-handed and reported right wrist pain that varied between 2/10 to 10/10. (Doc. 10, p. 7-8; Tr. 273). Plaintiff claims that at two consultative examinations in January 2022 and May 2023, the doctors diagnosed her with cubital tunnel syndrome on the right. (Doc. 10, p. 8). She argues that she has significant limitations from this impairment such as having

difficulty on the right side with fastening clothing and jewelry, lifting, reaching, holding onto objects without dropping them, and pain. (Doc. 10, p. 9).

In the decision, the ALJ considered Plaintiff's cubital tunnel syndrome. The ALJ acknowledged that Plaintiff alleged inability to perform work based in part on her cubital tunnel syndrome and nerve pain. (Tr. 16). The ALJ also acknowledged that Plaintiff claimed she had difficulties using her hands for reaching, lifting and carrying objects due to her impairment. (Tr. 16). The ALJ also considered the medical evidence from before Plaintiff's onset date that showed severe cubital tunnel syndrome of the right upper extremity and that Plaintiff received care for her right elbow and wrist for her cubital tunnel syndrome issues in late 2019 and early 2020. (Tr. 17).

The ALJ also considered both independent consultative internal-medicine-examination findings. (Tr. 17-18). The ALJ summarized a January 5, 2022 internal medicine examination performed by Donald Auerbach, D.O. (Tr. 17, 308-16). The ALJ noted that Plaintiff reported a history of right cubital tunnel syndrome, as well as other impairments. (Tr. 17). The ALJ noted that Plaintiff also reported that despite her impairments, Plaintiff could live alone, needed no help at home, took care of her personal needs, socialized with friends, prepared her own meals, cleaned her house, did her own laundry, and was able to shop. (Tr. 17, 309). The ALJ also noted that Dr. Auerbach found Plaintiff had full strength in her upper and lower extremities,

and normal range of motion throughout. (Tr. 17, 311, 314-16). Dr. Auerbach also found that Plaintiff's hand and finger dexterity were intact, grip strength was 4/5 on the right and "[e]ven though it is abnormal, she can zip, button, and tie." (Tr. 311). Lastly, the ALJ noted that Dr. Auerbach found Plaintiff had no limitations for sitting, standing, walking, climbing steps, bending, kneeling, lifting, carrying, pushing, pulling, or fine motor activity. (Tr. 17, 312).

On May 18, 2023, Plaintiff underwent a second independent consultative internal medicine examination performed by Elaine Holmes, M.D. (Tr. 17, 360-66). The ALJ summarized Dr. Holmes' findings. (Tr. 17). Plaintiff again reported a history of right cubital tunnel syndrome. (Tr. 360). The ALJ noted that Plaintiff showed slightly reduced right upper extremity strength and mild right bicep atrophy. (Tr. 17, 362). Finally, the ALJ noted that Dr. Holmes found Plaintiff had no limitations for sitting, standing, walking, climbing stairs, kneeling and performing fine motor activities of the hands, and had mild limitations for bending, lifting, carrying, pushing, or pulling. (Tr. 17-18, 363).

The ALJ also considered the opinions of the State agency medical consultants. (Tr. 19). The ALJ noted that on June 5, 2023, on reconsideration, Shakra Junejo, M.D. found Plaintiff was limited on the right for reaching overhead. (Tr 19, 72).

Based on the medical and other evidence of record, the ALJ included a limitation in the RFC for frequently reaching overhead with the right upper extremity. The ALJ summarized his finding:

> The claimant is limited by spine disorders and abnormalities of major joints, restricting claimant to work at a light exertional level with the above postural and reaching limitations. However, the totality of the medical evidence of record, including the course of conservative treatment, the frequency and duration of care, the lack of treatment during the applicable period, and the claimant's own[ ] acknowledged abilities, support, demonstrate and establish claimant's capacity to perform work within the residual functional capacity assessed herein. The above residual functional capacity assessment is supported by the totality of the objective medical evidence as a whole. The claimant has severe impairments that result in some limitation, but cla[i]mant does not have impairments, combination of impairments, or limitations severe enough to be disabling within the meaning of the Social Security Act.

(Tr. 20).

In this case, the ALJ considered Plaintiff's cubital tunnel syndrome throughout the decision. The ALJ noted that before her disability onset date, she was diagnosed with this impairment, the independent consultative examiners diagnosed her with this impairment, and the ALJ included a limitation in the RFC related to this impairment. The ALJ also considered that even with this impairment, Plaintiff continued to care for her animals, attend to her personal needs, prepare meals, perform household chores, operate a motor vehicle, shop for necessities, socialize with others, and follow written and spoken instruction. (Tr. 16). Thus, the ALJ thoroughly considered Plaintiff's cubital tunnel syndrome when assessing the RFC.

Plaintiff also argues that the ALJ did not include limitations to occasional handling and fingering in the hypothetical to the vocational expert and, if these limitations were included, Plaintiff would be unable to return to her past relevant work. (Doc. 10, p. 9). For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ need not include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

At the hearing, the ALJ posed hypotheticals to the vocational expert that did not include a limitation to occasional handling and fingering. (Tr. 54-57). Instead, the ALJ included a limitation to frequently reaching overhead, as well as other postural limitations. (Tr. 55-56). The ALJ included all the limitations he found that were supported by the record in the hypothetical to the vocational expert, especially given that both independent medical consultants found no limitations for fine motor activities of the hands. As explained above, the evidence of record supports the

ALJ's limitations in the RFC, which were the same limitations in the hypothetical posed to the vocational expert. The ALJ was not required to include more. Substantial evidence supports the ALJ's consideration of Plaintiff's cubital tunnel syndrome, the RFC assessment, and the hypothetical posed to the vocational expert and remand is not warranted on these issues.

### B. Mild Mental Limitations

Plaintiff does not challenge the ALJ's assessment that she had mild limitations in all four broad areas of mental functioning. (Doc. 10, p. 13). Instead, Plaintiff argues that because the ALJ found Plaintiff able to return to her highly skilled past relevant work, the ALJ should have found that her anxiety impairment caused at least some effect on her ability to perform basic mental functions. (Doc. 10, p. 12). As stated above, in assessing an RFC, an ALJ must consider all the relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).

In finding mild limitations in the four broad mental functioning areas, the ALJ thoroughly discussed Plaintiff's anxiety impairment. (Tr. 13-14). The ALJ generally found that upon testing, Plaintiff demonstrated normal findings throughout the applicable period. (Tr. 13-14). The ALJ also found that there was no substantial evidence in the record to show significant limitations that would adversely impact Plaintiff's abilities in the four broad mental functional areas, which are: (1)

understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 13-14).

In assessing the RFC, the ALJ discussed Plaintiff's anxiety impairment. (Tr. 16). The ALJ noted that Plaintiff alleged that one cause of her inability to work was her anxiety. (Tr, 16). During the first independent consultative medical examination, the ALJ noted that Plaintiff reported a history of anxiety. (Tr. 17). The ALJ also considered the State agency psychological consultants opinions finding Plaintiff's mental health allegations non-severe. (Tr. 19). Thus, the ALJ considered Plaintiff's allegations of anxiety in the decision.

Plus, in finding at most mild mental impairments, other courts have found that an ALJ need not include any mental limitations in the RFC. *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria.") (citing *Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (per curiam)). For these reasons and considering the record as a whole, substantial evidence supports the ALJ's RFC assessment and finding that Plaintiff can return to her past relevant work.

### C. Affordability of Medical Care

Plaintiff contends that she did not have extensive treatment for her various health conditions because she had no medical insurance and could not afford to pay for medical care. (Doc. 10, p. 7). In evaluating a plaintiff's symptoms and their functional effect, "the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). An ALJ must consider evidence showing a plaintiff cannot afford medical care before denying benefits based on non-compliance with care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff could not afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ need not delve

into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).

The ALJ did not deny benefits solely based on Plaintiff's lack of treatment during the relevant period. In the decision, the ALJ acknowledged that Plaintiff testified that she lacked treatment during the relevant period because she had no insurance and could not afford care. (Tr. 16). Even so, the ALJ based his decision on the State agency medical consultants' opinions, the independent medical consultants' opinions, Plaintiff's activities of daily livings, and all the medical and other evidence of record, including Plaintiff's testimony and reports. The ALJ afforded many other reasons to deny benefits here. Therefore, remand on this point is not warranted.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 14, 2025.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties